# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

_____
                                        )
In re:                                  )       Chapter 13
                                        )       Case No. 09-30413-HJB
FRANCIS W. EULIANO, JR.,                )
SUSAN Y. EULIANO,                       )
                                        )
            Debtors                     )
_____ )

## MEMORANDUM OF DECISION

Before the Court is a motion filed by Denise M. Pappalardo, Chapter 13 trustee (the "Trustee"), to dismiss this Chapter 13 bankruptcy case under 11 U.S.C. § 1307(c)(1), on the grounds that the failure of the debtors' plan to provide for full payment of a mortgagee's prepetition arrearage claim constitutes an unreasonable delay prejudicial to creditors. Because the plan has already been confirmed without objection, the Court must determine whether the failure to fully provide for the secured creditor's claim through the plan now warrants dismissal of this case.

I.      FACTS AND TRAVEL OF THE CASE

On March 20, 2009, Francis W. Euliano, Jr. and Susan Y. Euliano (the "Debtors") filed a petition seeking relief under Chapter 13 of the United States Bankruptcy Code (the

1

"Bankruptcy Code" or the "Code").[1]  On Schedule A – Real Property, the Debtors listed their residence (the "Property") and, on Schedule D – Secured Creditors, indicated that Countrywide Home Loans ("Countrywide") held a mortgage on the Property (the "Mortgage"), securing a claim in an outstanding amount of $228,370.

On March 24, 2009, the Court issued its standard "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines," ECF No. 11, which notice was served on all creditors, including Countrywide.  See BNC Certificate of Mailing - Meeting of Creditors, March 26, 2009, ECF No. 12.  Consistent with relevant Federal Rules of Bankruptcy Procedure (the "Rules" or "Bankruptcy Rules") and Massachusetts Local Bankruptcy Rules ("MLBR" or the "Local Rules"), the notice informed parties in interest that the deadline for all creditors (except governmental units) to file proofs of claim was July 28, 2009 (the "Bar Date")[2] and that objections to the Debtors' Chapter 13 plan must be filed by the later of: (i) thirty days after the first date set for the meeting of creditors pursuant to § 341 or (ii) thirty days after the service of a modified plan.[3]  As the § 341 meeting was scheduled for April 29, 2009, the deadline for filing objections to the Debtors' Chapter 13 plan was May 29, 2009 – approximately one month *prior to* the Bar Date.

On April 22, 2009, the Debtors filed their Chapter 13 plan (the "Plan"), ECF No. 16,

---

[1] See 11 U.S.C. §§ 101 et seq.  All section references in this memorandum, unless otherwise noted, are to sections of the Bankruptcy Code.

[2] See Fed. R. Bankr. P. 3002(c) ("In a . . . chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors . . ., except . . . (1) A proof of claim filed by a governmental unit . . . is timely filed if it is filed not later than 180 days after the date of the order for relief. . . .").

[3] See MLBR 13-8(a)("Any objection to confirmation of a chapter 13 plan shall be filed no later than the later of (i) thirty (30) days after the first date set for the section 341 meeting or (ii) thirty (30) days after service of a modified plan, unless otherwise ordered by the Court.").

which was served on all creditors and the Trustee on May 6, 2009. <u>See</u> Amended Certificate of Service, ECF No. 23. The Plan provides for monthly payments of $165 for sixty months, allocated between the prepetition arrears on the Mortgage, a small (approximately two percent) dividend to unsecured creditors, and the Trustee's administrative fee. Prepetition Mortgage arrears in the amount of $8,000 were to be paid in full through the Plan, but the postpetition monthly Mortgage payments would be paid directly to Countrywide (i.e., not through the Plan).

Countrywide timely filed a proof of claim (the "Countrywide Claim") on June 12, 2009 – before the Bar Date, but almost two weeks after the deadline for filing an objection to the Plan. The Countrywide Claim reflected a secured claim in the total amount of $246,473.37, of which $15,871.83 was due in prepetition arrears. Despite the fact that the Plan represented the prepetition arrears owed to Countrywide as only $8,000, Countrywide did not file an objection to the Plan.[4]

And despite the fact that Countrywide's claim for prepetition arrears was almost *double* the amount provided for by the Plan, the Debtors did not file an objection to the Countrywide Claim,[5] nor did they amend the Plan to account for the higher arrearage amount.[6] The Trustee likewise failed to raise an objection to either the Plan or the Countrywide Claim. Instead, on December 30, 2009, more than six months after the

---

[4] Although the Countrywide Claim was filed after the deadline for filing objections to the Plan, this Court routinely allows timely-filed motions to extend the deadline for filing objections.

[5] Pursuant to Local Rule 13-13(e), in a Chapter 13 case, the deadline for filing objections to proofs of claim is thirty days after the Bar Date. <u>See</u> MLBR 13-13(e).

[6] <u>See</u> 11 U.S.C. § 1323(a) ("The debtor may modify the plan at any time before confirmation . . . .").

Countrywide Claim was filed, and well after the deadlines for objecting to the Plan or proofs

of claim had expired, the Trustee submitted a proposed confirmation order to the Court,

and the Plan was confirmed that day (the "Confirmation Order").[7]  The Confirmation Order

specifically addressed the payment of Mortgage arrears and ongoing postpetition monthly

Mortgage payments:

> Countrywide Home Loans (the "Mortgagee") is retaining its lien on the
> [P]roperty . . . . The debtor shall continue to make regular monthly payments
> in accordance with the contract with the Mortgagee.  The Mortgagee will be
> paid its prepetition arrearage in the sum of $8,000.00 over 60 months at the
> sum of $133.34 each month.

Order Confirming Chapter 13 Plan, December 30, 2009, ECF No. 35.

Following confirmation of the Plan, the Debtors continued to make timely Plan and

Mortgage payments.[8]  However, six months later, on July 8, 2010, the Trustee awoke and

filed the instant motion to dismiss the Debtors' case (the "Motion to Dismiss").  In her

Motion to Dismiss, the Trustee recites that, after reviewing the claims register maintained

---

[7] The practice in this District is to await a proposed order of confirmation filed by the Chapter 13 trustee before confirming a Chapter 13 plan.  Local Rule 13-11 governs this practice and provides:

(a)   Where no objection to confirmation of a chapter 13 plan is filed within the time limits established [by the Local Rules], the Court may enter an order confirming the plan without a hearing.

. . .

(c)   The chapter 13 trustee shall submit a proposed order of confirmation to the Court in conformity with MLBR Official Local Form 4 within twenty-one (21) days after the later of 1) the Court's order overruling any objection to confirmation; 2) the withdrawal of an objection to confirmation; or 3) in the event that there are no objections to confirmation, the deadline for filing objections to confirmation. . . .

MLBR 13-11.

[8] Or, at the very least, there was no indication in the pleadings or at oral argument that the Debtors had failed to make those payments.

by the Court, she concluded that "[t]he confirmed plan fails to adequately address those claims filed before the bar date . . . [and] . . . that the Debtor's failure to address the claims as filed or to file an amended plan constitutes unreasonable delay prejudicial to creditors pursuant to 11 U.S.C. § 1307(c)(1)." Motion of Chapter 13 Trustee to Dismiss Case, July 8, 2010, ECF No. 49. Specifically, the Trustee now was focused on the discrepancy between the prepetition arrearage amount set forth in the Countrywide Claim and the amount provided for under the Plan.

The Debtors' initial written response to the Motion to Dismiss indicated that they were reviewing the claims filed in the case and would be filing an amended plan. <u>See</u> Debtors' Response to Trustee's Motion to Dismiss Case, July 16, 2010, ECF No. 52. But at the hearing on the Motion to Dismiss (the "Hearing"), the Debtors took a different position, now arguing that the Motion to Dismiss should be denied *and* that the Debtors should not be required to amend the Plan for the reasons set forth below. Hr'g Tr. 3:25 - 4:10, Aug. 5, 2010. The Court took the matter under advisement at the conclusion of the hearing and granted the parties additional time to file supplemental briefs. Both parties have done so.

II.    <u>POSITIONS OF THE PARTIES</u>

It is important to note what is and what is not presently before the Court. The Debtors have still not objected to the Countrywide Claim. Accordingly, under the Code and Rules and for these purposes, Countrywide's claim for prepetition Mortgage arrears is

deemed to be in the allowed amount of $15,871.83[9]  Further, inasmuch as the Plan has been confirmed, all parties are bound, pursuant to § 1327(a), to the *treatment* of the Countrywide Claim provided for in the Plan – i.e., payment of $8,000 toward the arrears.[10] Finally, the Debtors concede that any prepetition arrears not provided for by the Plan will remain due upon completion of the Plan and will remain secured by the Property pursuant to the Mortgage.[11]  The dispute here is simply whether, in light of the confirmation of the Plan without objection and the disparity between the Plan allocation for Mortgage arrears and the amount of the Countrywide Claim as allowed, the Debtors can now be compelled to modify their Plan under § 1329 or face dismissal of their case for cause under § 1307(c)(1).[12]

---

[9] See 11 U.S.C. § 501(a) ("A creditor . . . may file a proof of claim."); 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."); Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and *amount* of the claim.") (emphasis supplied); MLBR 13-13(e) (". . . Any claim to which a timely objection is not filed shall be deemed allowed . . . .").

[10] See 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.").

[11] These legal concessions by the Debtor find ample support in the relevant case law.  See, e.g., Universal American Mortg. Co. v. Bateman (In re Bateman), 331 F.3d 821, 831-33 (11th Cir. 2003); In re Ryan, No. 08-40601, 2010 WL 2889107, *2 (Bankr. D. Mass. July 21, 2010); In re Ryan, 431 B.R. 1, 3-4 (Bankr. D. Mass. 2010); In re Kincaid, 316 B.R. 735,737 (E.D.Cal. 2004); In re MacKenzie, 314 B.R. 277, 281 (Bankr.D.N.H. 2004); Fleet Real Estate Funding Corp. v. Fewell (In re Fewell), 164 B.R. 153, 156 (Bankr. D. Colo. 1993); Fireman's Fund Mortg. Corp. v. Hobdy (In re Hobdy), 130 B.R 318, 322 (B.A.P. 9th Cir. 1991)  (Perris, J., concurring) ("the plan binds the parties to the amount the trustee will distribute under the plan, but is not binding as to the amount of the claim"); In re Stein, 63 B.R. 140, 146 (Bankr. D. Neb. 1985).

[12] Although the Trustee's motion, as filed, only requested dismissal of the Debtors' case, at the Hearing and in her supplemental brief, the Trustee sought, in the alternative, an order requiring the Debtors to amend the Plan to account for the larger arrearage amount included in the Countrywide Claim.  See Chapter 13 Trustee's Brief in Support of the Motion to Dismiss 2, Oct. 5, 2010, ECF No. 63.  The Debtors also specifically addressed the question whether modification

## A.    Trustee

The Trustee raises several arguments in support of modification or dismissal.  First, she argues that the harm to the Debtors in failing to account for the full amount of arrears ultimately outweighs the benefit the Debtors receive by completing the Plan as currently formulated.  Because the unpaid prepetition arrears will remain secured by the Property after completion of the Plan, the likely outcome, she opines, is that the Debtors, after completing five years of Plan payments including $8,000 in payments to Countrywide, will still face a foreclosure of the Mortgage.  In that respect, the Trustee argues, the failure to fully address the Mortgage arrears is inconsistent with the very purpose of Chapter 13 of the Code – namely, to provide the Debtors an opportunity to reorganize their financial affairs in order to achieve a "fresh start" upon emergence from bankruptcy.  The Trustee contends that, by not curing the arrears on their secured debts, the Debtors here are not attempting a true reorganization to achieve this fresh start, but are instead merely delaying an inevitable foreclosure.

Second, the Trustee argues that the Debtors' failure to provide for the full amount of the arrears runs afoul of § 1322(b)(5), which permits a Debtor to reinstate a defaulted long-term debt by paying the full amount of arrears within a reasonable time and maintaining ongoing payments during the life of a Chapter 13 plan.  Because the Debtors are not paying the full amount of the arrears, the Trustee maintains that the Debtors are not curing the arrears within a "reasonable time," as required by the Code.

_____

pursuant to § 1329 of the Code could be compelled.  <u>See</u> Debtors' Memorandum of Law in Opposition to Trustee's Motion to Dismiss Chapter 13 Case 7 n.2, 9, 11, Oct. 4, 2010, ECF No. 62. Thus, the modification question is properly before the Court.

Third, the Trustee contends that the Plan disrupts the priority scheme of the Bankruptcy Code, since unsecured creditors, albeit receiving a small dividend, are being provided with payments that should be paid toward the Debtors' secured claims. In fact, the Trustee notes, the Debtors gain no benefit by making payments to unsecured creditors at the expense of their secured debt, since (to the extent the unsecured debts are dischargeable under the Code) those debts will be discharged upon completion of the Plan whether or not a dividend is provided.

Finally, the Trustee urges the Court to examine the overall purpose and structure of the Bankruptcy Code and to consider the inherently conflicting deadlines and procedures related to claims and plan objections and allowance. Since these deadlines and procedures lack clear synchronicity (i.e., Chapter 13 plans may be confirmed prior to the bar date for filing proofs of claim), the Court of necessity must consider whether to dismiss a Chapter 13 case or order modification of a plan after an initial plan has been confirmed to account for problems caused by debtors' erroneous estimates of claims, debtors' neglect to include claims, or even debtors' bad faith. Furthermore, the Trustee says, the purpose of modification under § 1329 is to account for these types of postconfirmation concerns, a goal that would be undermined if debtors could bind creditors to accept the debtors' estimates of claims prior to the deadline for filing those claims.

According to the Trustee, the Debtors simply cannot successfully reorganize their financial affairs pursuant to the Plan as confirmed, nor are they treating the Countrywide Claim consistent with the Code. Therefore, the Trustee contends, the Debtors must either modify the Plan or the case should be dismissed.

8

**B.    Debtors**

The Debtors argue that the case should not be dismissed, and they should not be

ordered to modify the Plan, because confirmation of the Plan is *res judicata* as to the issues

raised by the Trustee.  Relying on language from a recent United States Supreme Court

case, United Student Aid Funds, Inc. v. Espinosa, – U.S. –, 130 S.Ct. 1367 (2010), and

Judge Hoffman's recent holding in a case involving the issues raised here, see In re Ryan,

431 B.R. 1 (Bankr. D. Mass. 2010) ("Ryan I"); In re Ryan, No. 08-40601, 2010 WL 2889107

(Bankr. D. Mass. July 21, 2010) ("Ryan II"), the Debtors maintain that the Plan is now

binding on the Trustee and all creditors and should be consummated according to its terms,

despite the fact that the Plan does not provide for the full payment of the Debtors'

prepetition Mortgage arrears.[13]

The Debtors dispute the Trustee's characterization of the "fresh start" principle under

the Bankruptcy Code.  According to the Debtors, "[a] 'fresh start' is not merely insurance

that a debtor will exit bankruptcy saddled with no debt, but instead more of an economic

rehabilitation for Debtors – an ability to reenter the economic community free of

encumbrances that would otherwise prevent them from leading a healthy financial life."

Debtors' Memo. in Opp. 11.  The Debtors maintain that, just as some debtors emerge from

Chapter 13 with debts that are not dischargeable, the fact that they may still be liable for

the remaining prepetition arrears upon Plan completion does not offend either the text or

---

[13] The Debtors admit that, at the time they filed their Plan, they were not able to determine the exact amount of prepetition arrears owed to Countrywide.  The estimate of arrears in the amount of $8,000 was, according to them, a good faith estimate of the amount that would satisfy the arrears in full.  The Debtors say they are not in a position to afford plan payments if the Plan were modified to include the total arrearage amount and are "exploring options as far as a potential sale, or finding other financing to cure that issue . . . post-plan."  Hr'g Tr. 3:23-25.

purpose of the Bankruptcy Code.  Rather, they say that completion of the Plan and entry of discharge will result in a more manageable debt load.

The Debtors further insist that they are entitled to deference in deciding the appropriate method for reorganizing their debts to achieve a "fresh start" through Chapter 13.  This flexibility, say the Debtors, is implicit in Chapter 13, which allows debtors to craft reorganization plans based on their personal assessments of financial needs and a realistic ability to make plan payments.  Having thus formulated their Plan, having received no objections thereto, and having achieved confirmation, the Debtors contend that the Trustee should not be entitled, postconfirmation, to either case dismissal or compelled plan modification.

Finally, the Debtors argue that they cannot be forced to modify the Plan because the Trustee has not alleged any change in circumstances warranting such modification.  The Debtors say that modification on motion by the Trustee is appropriate when the Debtors' financial circumstances experience a material change.  But because they have experienced no change in their financial circumstances, the Debtors contend that there are no grounds for compelling a modification of the Plan under § 1329.


III.   DISCUSSION

The issues presented in this case  highlight recurring problems in Chapter 13 cases across the country – namely, the complexities and conflicts that arise from the largely disjointed Bankruptcy Code provisions and Bankruptcy Rules governing filing, objecting to, and achieving confirmation of Chapter 13 plans and those governing filing, objecting to, and allowing (or disallowing) creditors' claims.  Overlaying the myriad procedural difficulties

arising from those Code and Rule provisions is the all-too-common failure of interested

parties – debtors, creditors, and trustees alike – to timely raise objections that would allow

resolution of conflicts between creditors' claims and debtors' plans more expeditiously and

effectively.  Here, each of the interested parties – but most particularly, the Trustee and

Countrywide – had an interest in resolving the disconnect between the Debtors' Plan and

the Countrywide Claim *before* the Plan was confirmed.  And each of those parties was in

a position far better than the Court to review and compare the relevant claims and Plan

provisions to ensure compliance with the Code.[14]  But neither did so.  Instead, each looked

away and participated by silence and omission as the Court was urged to confirm an

otherwise unconfirmable plan.  Now, seemingly without regret, the Trustee turns to this

Court for resolution of a problem that should never have arisen.[15]

---

[14] Bankruptcy courts have a duty to "address and correct a defect in a debtor's proposed plan even if no creditor raises the issue," Espinosa, 130 S.Ct. at 1381 n.14.  But where the possible impediment to confirmation (e.g., failure to comply with § 1322(b)(5)) is not "an obvious plan defect," the onus is on interested parties to properly and timely bring those issues to the Court's attention. In re Castleberry, – B.R. –, 2010 WL 4023393, *2 (Bankr. M.D. Ga. Sept. 29, 2010) (Chapter 13 plan's proposed bifurcation of claim secured by debtors' vehicle "not . . . void on its face even if a creditor could defeat the plan proposal with an objection" based on the "hanging paragraph" in § 1325(a)(9)).  Although the Clerk of the Bankruptcy Court maintains a register of filed proofs of claim, those proofs of claim are not included on the docket of the main bankruptcy case.  Thus, the Court is not apprised of discrepancies between proofs of claim and amounts provided for by Chapter 13 plans unless and until an objection is raised.

[15] Variations on these themes are rampant in the case law, producing a mixed bag of jurisprudence on the *res judicata* effect of confirmed Chapter 13 plans, deemed allowance of proofs of claim, conflicts between plans and proofs of claim, and parties' failure to timely raise pertinent issues and protect their rights.  As just a sample of the many cases addressing these issues, see Universal American Mortg. Co. v. Bateman (In re Bateman), 331 F.3d 821 (11th Cir. 2003); Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995); In re Chappell, 984 F.2d 775 (7th Cir. 1993); Sun Fin. Co. v. Howard (In re Howard), 972 F.2d 639 (5th Cir. 1992); In re Pence, 905 F.2d 1107 (7th Cir. 1990); Simmons v. Savell (In re Simmons), 765 F.2d 547 (5th Cir. 1985); In re Stewart, No. 03-18462, 2010 WL 4259940 (Bankr. E.D. La. Oct. 21, 2010); In re Stewart, No. 03-18462, 2010 WL 3490976 (Bankr. E.D. La. Aug. 23, 2010); Armstrong v. Trustco Bank (In re Armstrong), 434 B.R. 120 (Bankr. S.D.N.Y. 2010); In re Ryan, No. 08-40601, 2010 WL 2889107 (Bankr. D. Mass. July 21, 2010); In re Ryan, 431 B.R. 1 (Bankr. D. Mass. 2010); In re McLemore, 426 B.R. 728 (Bankr.

A.     In re Ryan

Recently, Judge Hoffman, sitting for the Bankruptcy Court in the District of Massachusetts, issued two memoranda in the Chapter 13 case of In re Ryan, disposing of an almost identical dismissal motion filed by the Trustee. See United States Bankruptcy Court, District of Massachusetts, Case No. 08-40601-MSH.  As in this case, the Trustee's request for dismissal was premised on the Debtor's failure to account for the full amount of prepetition arrears on a secured debt proposed to be paid through the debtor's confirmed Chapter 13 plan. Ryan I, 431 B.R. at 2.  As in this case, the secured creditor had timely filed a proof of claim prior to confirmation of the plan. Id.  As in this case, the creditor alleged a prepetition arrearage higher than that provided for in the plan. Id.  As in this case, the Debtor failed to timely object to the claim. Id. at 3.  And, as in this case, neither the creditor nor the Trustee objected to the plan prior to confirmation. Id.  Nearly a year and a half after the plan was confirmed (seventeen months, to be exact), the Trustee awoke and filed her motion, arguing that the debtor's failure to provide for the full amount of the allowed claim constituted an unreasonable delay that was prejudicial to creditors. Id. at 2,

---

S.D. Ohio 2010); City of Flint v. Bekofske (In re McGee), 414 B.R. 132 (Bankr. E.D. Mich. 2009); In re Woods, 406 B.R. 293 (Bankr. N.D. Ohio 2009); In re Stansbury, 403 B.R. 741 (Bankr. M.D. Fla. 2009); In re Ruhl, 399 B.R. 49 (Bankr. E.D. Wis. 2008); McDonald v. Bank Fin. (In re McDonald), 336 B.R. 380 (Bankr. N.D. Ill. 2006); In re Thaxton, 335 B.R. 372 (Bankr. N.D. Ohio 2005); In re Searcy, 333 B.R. 617 (Bankr. D. Mass. 2005); In re Bryant, 323 B.R. 635 (Bankr. E.D. Pa. 2005); In re Stiller, 323 B.R. 199 (Bankr. W.D. Mich. 2005); In re Kincaid, 316 B.R. 735 (E.D. Cal. 2004); In re MacKenzie, 314 B.R. 277 (Bankr. D.N.H. 2004); In re Hudson, 260 B.R. 421 (Bankr. W.D. Mich. 2001); Factors Funding Co. v. Fili (In re Fili), 257 B.R. 370 (B.A.P. 1st Cir. 2001); In re Harnish, 244 B.R. 91 (Bankr. N.D.Iowa 1998); In re Bernard, 189 B.R. 1017 (Bankr. N.D. Ga. 1996); In re Basham, 167 B.R. 903 (Bankr. W.D. Mo. 1994); Lee Serv. Co. v. Wolf (In re Wolf), 162 B.R. 98 (Bankr. D.N.J. 1993); Fleet Real Estate Funding Corp. v. Fewell (In re Fewell), 164 B.R. 153 (Bankr. D. Colo. 1993); Fireman's Fund Mortg. Corp. v. Hobdy (In re Hobdy), 130 B.R 318 (B.A.P. 9th Cir. 1991); In re Hebert, 61 B.R. 44 (Bankr. W.D. La. 1986); In re Stein, 63 B.R. 140 (Bankr. D. Neb. 1985).

3.

In <u>Ryan I</u>, Judge Hoffman denied the Trustee's request for dismissal, ruling that the Trustee could not establish any unreasonable delay, since the debtor was current on his payments under the confirmed plan. <u>Id.</u> at 3. Instead, Judge Hoffman interpreted the Trustee's motion as one seeking an order to compel modification of the plan under § 1329.[16] <u>Id.</u> But that request, too, was unsuccessful, since Judge Hoffman held that the plan was *res judicata* as to the payments the creditor would receive through the plan, and the debtor could not compelled to increase that distribution. <u>Id.</u> at 3-4.

Following the decision in <u>Ryan I</u>, the Trustee filed a motion seeking reconsideration or clarification, characterized "in terms of a struggle for primacy between the *res judicata* effect of a chapter 13 plan confirmation order under § 1327(a) of the Bankruptcy Code . . . and the *prima facie* validity of a proof of claim under § 502 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3001." <u>Ryan II</u>, 2010 WL 2889107, at *1. But Judge Hoffman did "not view the interplay between §§ 1327 and 502 as an all-or-nothing struggle for supremacy." <u>Id.</u> Instead, he reiterated that while the *amount* of the creditor's prepetition arrearage claim was established by its unobjected-to proof of claim, the debtor's confirmed plan was nonetheless *res judicata* regarding the *treatment* of that claim in the plan. <u>Id.</u> However, he noted that, to the extent secured prepetition arrears were not paid in full through the plan, the difference would have to be paid outside the plan. <u>Id.</u>[17]

_____

[16] Section 1329 governs postconfirmation modification of plans, and provides that the "plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed secured claim," under certain enumerated circumstances. <u>See</u> 11 U.S.C. § 1329(a).

[17] In this respect, this Court respectfully disagrees with the implication in <u>Ryan I</u> and <u>Ryan II</u> that, in some cases, leaving allowed prepetition secured arrears to be dealt with after completion of a Chapter 13 plan is consistent with the permitted treatment of a secured claim under

Judge Hoffman's frustration with the Trustee's delay in bringing the motion was palpable.  The Trustee having waited nearly a year and a half to raise the issue, Judge Hoffman held that it was simply too late to seek dismissal or modification.  Id.  But Judge Hoffman did not foreclose the possibility that, under certain circumstances, the Trustee's arguments might carry more weight.  Indeed, he specifically noted that the Ryan I holding would not "prevent the trustee or an aggrieved creditor in the appropriate case from objecting to confirmation of a plan *or seeking modification upon a pleading filed with a reasonable time*, asserting that the amount of the untreated payment due a secured creditor outside the plan renders the plan not feasible, not in good faith or violative of some other provision of the Bankruptcy Code such as § 1322(b)(5) which requires curing defaults within a reasonable time."  Id.

The Debtors understandably rely heavily on the memoranda outlining Judge Hoffman's reasons for denying the Trustee's motion in Ryan I and Ryan II.  And the Court recognizes the indubitable parallels between Ryan and this case.  However, for reasons to be detailed below, the Court finds and rules that, under the facts present here, the Trustee's arguments in support of dismissal must prevail.

### B.    Dismissal under § 1307(c)(1)

Section 1322 of the Bankruptcy Code sets forth criteria for confirmation of a Chapter 13 plan of reorganization, including both mandatory and permissive provisions.  See 11 U.S.C. § 1322(a), (b); Ameriquest Mortgage Co. v. Nosek (In re Nosek), 544 F.3d 34, 44 (1st Cir. 2008).  Most relevant here is § 1322(b)(5), which allows debtors to cure prepetition

---

§ 1322(b)(5) or, at least, does not constitute an unreasonable delay under § 1307(c)(1) in payment of that claim.

arrears on long-term debt that is in default when a case is filed.[18]  That section states that

a Chapter 13 plan may

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . .

11 U.S.C. § 1322(b)(5).[19]

In order to avail itself of this provision, therefore, a debtor must do two things: (1)

cure the default *within a reasonable time* and (2) stay current on postpetition payments due

under the parties' original agreement.  See 11 U.S.C. § 1322(b)(5).[20]  This provision has

been consistently recognized as "designed to enable a debtor to preserve his equity in his

mortgaged home and to provide a means to restore and maintain his currency on a long-

term debt not otherwise provided for under the plan."[21]  Grubbs v. Houston First Am. Sav.

Ass'n, 730 F.2d 236, 245 (5th Cir. 1984).  And because the purpose of § 1322(b)(5) is to

allow debtors to cure a prepetition default, the amount of the prepetition arrears must be

paid in *full*.  See In re Byron, 133 B.R. 123 (Bankr. N.D. Ill. 1991) ("The plain meaning of

'cure' as used in section 1322(b)(5) is to remedy or rectify the default and restore matters

---

[18] Long-term debts are those that come due after the time for completion of a Chapter 13 plan.

[19] That section is also expressly excepted from the general prohibition on modification of debts, like the Debtors' obligation to Countrywide, that are secured solely by a lien on the debtor's primary residence.  See 11 U.S.C. §§ 1322(b)(2), (5); Nosek, 544 F.3d at 45 (quoting Rake v. Wade, 508 U.S. 464, 469 (1993)).

[20] See also Cole v. Cenlar Fed. Sav. Bank (In re Cole), 122 B.R. 943, 949 (Bankr. E.D. Pa. 1991) ("Once a debtor has chosen to cure arrearages in a Chapter 13 plan, § 1322(b)(5) requires that it be done in a certain way, i.e., by curing all defaults in a reasonable time while maintaining current payments.").

[21] See also Nosek, 544 F.3d at 45-46.

15

to the status *quo ante*.  Only a payment of the arrearage in full would do that.") (citation

omitted).[22]

Case law is also consistent in interpreting the "reasonable time" requirement under

§ 1322(b)(5) – what is "reasonable" may depend on the particular facts and circumstances

of an individual case, but "cannot exceed the statutory limitation of 60 months in a

reorganization plan."  Sapos v. Provident Inst. of Sav., 967 F.2d 918, 928 (2d Cir. 1992).[23]

Clearly, then, the Debtors' Plan does not comply with § 1322(b)(5).  It does not provide for

payment in full of the Debtors' prepetition Mortgage arrears and, accordingly, does not cure

the default within a reasonable time.  See Easley, 216 B.R. at 547 (where plan does not

make provision for payment of full amount of arrears as per creditor's proof of claim, the

plan "does not cure the arrearages within the five year life of the plan . . . and does not cure

the arrearages 'within a reasonable time,' as is required by § 1322(b)(5).")

---

[22] See also In re Cruz, 152 B.R. 866, 869 (Bankr. S.D.N.Y. 1993) (under § 1322(b)(5), mortgage arrears "must be paid *in full* during the life of the plan") (emphasis supplied); In re Session, 128 B.R. 147, 153 (Bankr. E.D. Tex. 1991) ("Reinstatement of the pre-bankruptcy agreement [pursuant to § 1322(b)(5)] . . . would require the Debtors . . . to cure all outstanding arrearages within the Plan.").

[23] See also Rogel v. Deutsche Bank Nat'l Trust Co. (In re Rogel), 425 B.R. 231, 234 n. 4 (Bankr. W.D. Pa. 2010) ("Courts have interpreted the phrase 'within a reasonable time' to mean during the life of the plan."); In re Hence, 358 B.R. 294, 305 (Bankr. S.D. Tex. 2006), aff'd 255 Fed. Appx. 28 (5th Cir. Nov. 5, 2007); U.S. v. Easley, 216 B.R. 543, 546-47 (W.D. Va. 1997) ("No plan . . . may propose payments [to cure a default under § 1322(b)(5)] over a period of more than five years under any circumstances."); First Nat'l Bank of Damariscotta v. Sidelinger (In re Sidelinger), 175 B.R. 115, 119 (Bankr. D. Me. 1994) ("The 'time' for cure [under § 1322(b)(5)] . . . certainly may not extend beyond the plan's term."); Cruz, 152 B.R. at 869; Richards v. Citicorp Mortg., Inc. (In re Richards), 151 B.R. 8, 18 (Bankr. D. Mass. 1993) (under § 1322(b)(5), "prepetition mortgage arrearages must be paid in full and cured by payment within a reasonable time, namely within a maximum plan term of 60 months"); Cole, 122 B.R. at 950 (arrears must be cured in full by the date of the final plan payment); In re Keays, 36 B.R. 1018, 1018-19 (Bankr. E.D. Pa. 1984) (chapter 13 plan that proposed to cure default over 20 months not confirmable, as not within a "reasonable time" under § 1322(b)(5); Cent. Fed. Sav. & Loan Ass'n v. King (In re King), 23 B.R. 779 (B.A.P. 9th Cir. 1982).

But this is a problem more appropriately addressed *prior* to confirmation where, as here, the creditor's proof of claim is filed before the plan is confirmed.  See, e.g., Easley, 216 B.R. 543 (denying confirmation of Chapter 13 plan where full amount of arrearages not provided for); Keays, 36 B.R. 1018 (same).  Can the Court now, after both the Trustee and Countrywide failed to either recognize or raise the inconsistencies between the Plan and the Countrywide Claim, order the case dismissed?

The Trustee moves for dismissal under § 1307(c)(1).  That section provides that "the court may . . . dismiss a case under this chapter . . . for cause, including – (1) unreasonable delay that is prejudicial to creditors . . . ."  11 U.S.C. § 1307(c)(1).  In Ryan, Judge Hoffman rejected any alleged delay because the debtor there was current on his plan payments.  431 B.R. at 3.  Here, too, there is no allegation that the Debtors are behind on their Plan payments.  But this Court views the unreasonable delay not with respect to the payments to be made under the Plan, but instead as an unreasonable delay by the Debtors in either objecting to the Countrywide Claim or modifying the Plan to repair an error in calculating the arrearage.  When the Debtors did neither, they became vulnerable to the contention that they were not, as required by  § 1322(b)(5), curing their prepetition Mortgage arrears within a "reasonable time."  Regardless of whether the problem is with the Debtor's calculation or Countrywide's calculation, the bottom line is the same.  The Plan, as currently formulated, poses an unreasonable and prejudicial delay in the resolution of Countrywide's Claim.

Nor can this Court accept the application of Espinosa to the issue presented here.  In Espinosa, the debtor had not only achieved plan confirmation without objection, but had completed plan payments and received a discharge under § 1328(a).  130 S.Ct. at 1374.

17

The question was whether, several years after the debtor's case was closed, a creditor holding the debtor's student loans could have the confirmation order set aside as "void" under Federal Rule of Civil Procedure 60(b)(4) on grounds that student loans can only be discharged through an adversary proceeding, and not through a provision in a Chapter 13 plan, as the debtor had allegedly done.  Id. at 1376.[24]  The Court held that the confirmation order, although in conflict with applicable Code provisions, was not "void" and the creditor had failed to demonstrate entitlement to relief under Federal Rule 60(b)(4).  Id. at 1376-77. In so holding, the Court found that the creditor's due process rights were "more than satisfied" when it received notice of the filing and contents of the debtor's plan.  Id. at 1378.

In Espinosa, the debtor's proposed treatment of his student loans was inconsistent with the Code from the outset – it was "facially invalid," since student loans may only be discharged upon a showing of "undue hardship."  Id. at 1378-79; 11 U.S.C. § 523(a)(8). In contrast, it cannot be conclusively determined that a plan fails to comply with § 1322(b)(5) until the applicable deadlines for filing and objecting to proofs of claim have passed.

And this case presents different circumstances than those in Factors Funding Co. v. Fili (In re Fili), 257 B.R. 370 (B.A.P. 1st Cir. 2001), where the Untied States Bankruptcy Appellate Panel for the First Circuit (the "BAP") held that a debtor's plan proposing to discharge a secured claim in full (because the debtor asserted "there [was] no underlying obligation") was res judicata as to the treatment of that creditor's claim.  Id. at 371, 374.

---

[24] Actually, the debtor in Espinosa did provide for payment of his student loans through the Chapter 13 plan, but proposed to pay only the principal and specifically provided in the plan that the accrued interest would be discharged upon completion of the plan.  130 S.Ct. at 1374.  The dispute arose when the creditor later attempted to collect the unpaid interest on the loan.  Id.

The creditor failed to object to the debtor's plan prior to confirmation, but later filed a timely, postconfirmation claim. Id. at 371. The BAP held that the creditor received adequate notice of the plan and objection deadlines, and ignored the plan objection and confirmation process at its peril. Id. at 374. Because it failed to object to the plan, its purported claim was discharged in full. Id.

But the BAP distinguished Fili from other cases, such as In re Grogan, 158 B.R. 197 (Bankr. E.D. Cal. 1993), where the debtor's Chapter 13 plan did provide for payment of a claim later filed in a different amount. Id. at 373. The BAP noted that the Grogan case dealt with the amount of the creditor's claim, which, the court held, could not be unilaterally determined by the debtor and binding on the creditor prior to the expiration of the deadline for filing proofs of claim. Id.; Grogan, 158 B.R. at 199-200. The BAP explicitly distinguished the facts in Fili, holding that the plan was binding because it "provide[d] fair notice of final and certain treatment" (i.e., discharge in full) of the creditor's claim. Id. at 373 n.6.

This case is more like Grogan in that the Debtors' Plan proposed to treat Countrywide's secured claim by paying the prepetition arrears (as opposed to, for example, surrendering the property in satisfaction of the claim, see 11 U.S.C. § 1325(a)(5)(C)). That treatment is now binding on the Debtors and Countrywide. But the Debtors' unilateral, erroneous calculation of the amount of those prepetition arrears could not bind Countrywide without "violat[ing] fundamental principals [sic] of bankruptcy claims practice." Fili, 257 B.R. at 373 n.6 (quoting Grogan, 158 B.R. at 200). Regardless of whether confirmation of a Chapter 13 plan constitutes issue preclusion as to the treatment of a claim, it can not be preclusive as to the amount of the claim where the deadline to file a claim postdates

19

confirmation of the plan.  As the First Circuit Court of Appeals noted in <u>Vaqueria Tres</u>

<u>Monjitas, Inc. v. Irizarry</u>,

> *res judicata* will present no obstacle "when the litigant was denied a 'full and
> fair opportunity to litigate' his claims in the earlier proceeding; in this situation,
> application of *res judicata* would violate due process of law." <u>Arecibo Radio</u>
> <u>Corp. v. Com. of P.R.</u>, 825 F.2d 589, 592 (1st Cir.1987) (quoting <u>Allen [v.</u>
> <u>McCurry,</u> 449 U.S. 90, 101 (1980)]).

587 F.3d 464, 481 (1st Cir. 2009).

Where the deadline for filing claims falls after the deadline for objecting to a Chapter

13 plan, the failure of a creditor to object to a plan on the grounds that the plan has

misstated the amount of the claim can not, consistent with due process, bind the creditor

with respect to the amount which the creditor is required to identify no earlier than the

deadline for filing proofs of claim.  Thus, the Debtors' proposed Plan "treatment" of the

Countrywide Claim – payment of less than the full prepetition arrears – does not preclude

the Court from its postconfirmation conclusion that the Plan presents an unreasonable

delay prejudicial to creditors.[25]

IV.   <u>CONCLUSION</u>

Because the Debtors' Plan proposes to "cure and maintain" their Mortgage debt

pursuant to § 1322(b)(5) of the Code, the failure of the Plan to provide payment in full of

the allowed prepetition secured arrears constitutes an unreasonable delay, which delay is

prejudicial to Countrywide.   Accordingly, the case will be dismissed, pursuant to

---

[25] Because the Court finds sufficient grounds for dismissal under the plain language of
§ 1307(c)(1), it is unnecessary to further delve into the murkier issues regarding the Debtors' "best
interest" and the Bankruptcy Code's "fresh start" goals raised by the parties.

§1307(c)(1), unless the Debtors file, within 30 days, a motion seeking to modify their Plan,

consistent herewith.

An order in conformity with this Memorandum shall issue forthwith.


DATED: November 29, 2010                    By the Court,

_____

Henry J. Boroff
United States Bankruptcy Judge